Suzette F. **CALLISON**, Plaintiff,

v.

**CHARLESTON AREA MEDICAL CENTER, INC.**, Defendant.

Civ. A. No. 2:95–0900.

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 13, 1995.

---

Joseph W. Caldwell, Caldwell, Cannon–Ryan & Riffee, Ted M. Kanner, Ted Kanner Law Office, Charleston, WV, for plaintiff.

Stephen A. Weber and Bethann R. Lloyd, Kay, Casto, Chaney, Love & Wise, Charleston, WV, for defendant.

## MEMORANDUM OPINION
## AND ORDER

HADEN, Chief Judge.

Pending is Plaintiff's motion to remand this action to the Circuit Court of Kanawha County, West Virginia. The case was originally filed in that Court and was removed to this Court on October 3, 1995. For the following reasons, the Court DENIES Plaintiff's motion to remand.

### FACTS

Ms. Callison was employed by Charleston Area Medical Center (CAMC) as a nurse from May 25, 1970 to October 17, 1991. In June, 1990, she was diagnosed with bipolar affective disorder. That diagnosis allegedly was reported to CAMC's personnel director by Plaintiff's treating physician. Ms. Callison alleges bipolar affective disorder is a handicap as defined by *West Virginia Code* § 5–11–3(m) and West Virginia Human Rights Commission regulations.

After a leave of absence, Plaintiff returned to work in June, 1990. On October 14, 1991, near the end of a "24 hour on call" shift, she allegedly failed to mark a patient's chart properly. Plaintiff claims her mismarking of the chart resulted from a combination of the bipolar affective disorder and long work hours. Plaintiff also contends CAMC was on notice that long work hours could result in poor job performance and that CAMC was required by West Virginia law to accommodate her handicap by not requiring her to work overtime shifts. Ms. Callison was fired by CAMC for gross misconduct and behavior potentially jeopardizing the care and safety

of a patient, apparently based on the mismarked chart incident. She brought this action against CAMC claiming her termination was discriminatory under the West Virginia Human Rights Act, W.Va.Code § 5–11–1, *et seq.*

Count One of Plaintiff's two-count Amended Complaint alleges, among other things, she was entitled to short and long-term disability pay as part of her employee benefits and that her discharge deprived her of at least forty-five thousand dollars ($45,000.00) of disability coverage. Count Two similarly alleges Plaintiff suffered a loss of fringe benefits because of her termination. Plaintiff requests relief for the alleged illegal deprivation of disability pay and for loss of fringe benefits due her under CAMC's employee benefit plan. The complaint also seeks damages pursuant to the State Human Rights Act not associated with Ms. Callison's disability benefits or fringe benefits; these include loss of past and future earnings and other pecuniary losses, mental anguish and emotional distress, attorney's fees and costs of litigation.

## DISCUSSION

■ Defendant argues Plaintiff's claims are pre-empted and governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, because they seek benefits under an employee benefit plan. ERISA comprehensively regulates, among other things, employee welfare benefit plans that provide benefits in the event of sickness, accident, disability, or death. 29 U.S.C. § 1002(1). Congress included within ERISA several clauses setting out the legislation's pre-emptive effect. The first of those clauses states:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."

29 U.S.C. § 1144(a).

The Supreme Court has often noted the expansive sweep of the ERISA pre-emption clause. In *Ingersoll–Rand Co. v. McClendon* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474, 484 (1990) (internal quotation marks and citations omitted), the Court stated:

A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Under this broad commonsense meaning, a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

Given the broad scope of ERISA pre-emption, this Court concludes Plaintiff's action is "related to" an ERISA plan because she is attempting to obtain benefits allegedly owed her based on her membership in an ERISA plan. As the Supreme Court noted in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39, 52 (1987), "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if the ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."

■ Although Plaintiff's disability benefits and fringe benefits claims were brought pursuant to State law, it appears Plaintiff could have initiated her claim in this Court under ERISA: [1]

A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, or to clarify his rights or future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Normally, a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. The Supreme Court created an exception to this general rule in limited circumstances:

Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a de-

---

**1.** Plaintiff may also have a federal claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

fense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. *Gully v. First National Bank [of Meridian,* 298 U.S. 650, 56 S.Ct. 939, 80 L.Ed. 1378 (1936) ], *supra.* One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55, 63 (1987). The Court concluded Congress intended ERISA to be included in this select group. *Id.* More recently, the Court reaffirmed its holding that the pre-emptive effect of 29 U.S.C. § 1132(a)(1)(B) is "so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum notwithstanding the traditional limitation imposed by the 'well-pleaded complaint' rule." *Ingersoll–Rand v. McClendon, supra,* 498 U.S. at 145, 111 S.Ct. at 486, 112 L.Ed.2d at 487.

In the instant action Ms. Callison bases her claims on the West Virginia Human Rights Act and not on federal law. Because Plaintiff may not seek damages based on her membership in a benefit plan under State law that she would not be entitled to under ERISA, her State claims for disability benefits and other fringe benefits allegedly due her as a participant in CAMC's benefit plan are pre-empted.

■ This Court's jurisdiction over the instant action at this stage is, as already noted, based on the Court's holding in *Metropolitan*

*Life* that a § 1132 preemption defense confers federal question jurisdiction. *Metropolitan Life Insurance Co. v. Taylor, supra,* 481 U.S. at 67, 107 S.Ct. at 1548. Defendant has asserted that defense and the Court has determined the defense is properly raised because Ms. Callison's action appears, on its face, to be related to an ERISA plan. If Plaintiff is in fact able to state an § 1132 cause of action, the Court's jurisdiction will be based on 29 U.S.C. § 1132(e)(1): [2]

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) and (7) of subsection (a) of this section.

Thus, if Plaintiff is able to state a claim under (a)(1)(B) or the Americans with Disabilities Act by amending her complaint,[3] the Court will continue with subject matter jurisdiction to entertain the action.[4]

■ The existence of concurrent jurisdiction does not require remand. Our Court of Appeals held that where federal and state courts have concurrent jurisdiction, Congress must expressly provide for nonremovability to prevent removal. *Whitfield v. Federal Crop Ins. Corp.,* 557 F.2d. 413, 414 (4th Cir.1977). This Court likewise recognized previously "mere concurrent jurisdiction with the state courts is not enough to withstand removal on original jurisdiction grounds. Section 1441(a) of Title 28 U.S.C. allows for

---

**2.** Defendant's memorandum in opposition to remand would suggest the Court has exclusive jurisdiction over this action. Although 29 U.S.C. § 1132(e)(1) clearly gives state and federal courts concurrent jurisdiction over § 1132(a)(1)(B) actions, Defendant's memorandum, either intentionally or inadvertently, cites only a portion of § 1132(e)(1) and thereby leaves the reader with a mistaken impression of the scope of the Court's jurisdiction. *See* Def.'s Mem.Opp.Remand at 2.

**3.** It appears Plaintiff anticipated amending her complaint to include an ERISA and/or other causes of action if the Court denied removal. On

December 5, 1995, the Court granted a joint motion to extend the time during which the parties may amend pleadings until seven days after the Court rules on the remand motion.

**4.** The Court emphasizes that if Plaintiff's amended complaint fails to state an ERISA action, she will have no State law remedy for recovery of lost disability benefits or other fringe benefits. If she states neither an ERISA nor an Americans with Disabilities Act claim, the Court will remand the remaining State law claims to State Court.

removal of cases where federal district courts have jurisdiction 'except as otherwise expressly provided by Act of Congress.'" *Gleichauf v. Ginsberg,* 859 F.Supp. 229, 231 (S.D.W.Va.1994). No act of Congress provides that 29 U.S.C. § 1132(a)(1)(B) causes of action are non-removable. One district court pointed out:

> Had Congress intended to prohibit removal under Section 1132(a)(1)(B), it would have said so. Nothing within the ERISA statute bestows upon Plaintiff the right to keep his suit in state court just because he has been entitled to choose a state court as his forum. The very purpose and effect of removal statutes are to limit a plaintiff's discretion in choosing where to bring his suit.

*White v. Enron Corp. Merger Severance Plan,* 686 F.Supp. 582, 583 (N.D.Texas 1988). In fact, in *Metropolitan Life,* the seminal case in this area, the Supreme Court sanctioned removal of an § 1132(a)(1)(B) action to federal court.

The Court further concludes Plaintiff's remaining State law claims form part of the same case or controversy as the ERISA-related claims. It, therefore, will exercise supplemental jurisdiction over the remaining State law claims pursuant to 28 U.S.C. § 1367 if Plaintiff's amended complaint states a federal claim. If Plaintiff's amended complaint fails to state a federal claim, the Court will decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).